**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

IN RE:                                                      CASE NO.: 17-18430-AJC
                                                            CHAPTER 13

**ARACELY DIEGO,**

    **Debtor.**

_____/

## MOTION FOR RELIEF FROM AUTOMATIC STAY

Secured Creditor, REVERSE MORTGAGE SOLUTIONS, INC., by and through the undersigned counsel, hereby moves this Court, pursuant to 11 U.S.C. § 362(d), for a modification of the automatic stay provisions for cause, and, in support thereof, states the following:

1. Debtor, Aracely Diego, filed a voluntary petition pursuant to Chapter 13 of the United States Bankruptcy Code on July 3, 2017.

2. Jurisdiction of this cause is granted to the Bankruptcy Court pursuant to 28 U.S.C. § 1334, 11 U.S.C. § 362(d), Fed. R. Bankr. P. 4001(a), and all other applicable rules and statutes affecting the jurisdiction of the Bankruptcy Courts generally.

3. Secured Creditor hereby waives the requirements of 11 U.S.C. § 362(e). The automatic stay of any act against property of the estate under § 362(a) shall continue until this Court orders or the stay is otherwise terminated by operation of law.

4. On July 28, 2008, Aracely Diego executed and delivered a Promissory Note ("Note") and a Reverse Mortgage ("Mortgage") securing payment of the Note up to a maximum principal amount of $427,500.00 to World Alliance Financial Corp. The Mortgage was recorded on October 10, 2008 in Book 26606 at Page 3235 of the Public Records of Miami-Dade County, Florida.  The loan was transferred to Secured Creditor. True and

accurate copies of documents establishing a perfected security interest and ability to enforce the terms of the Note are attached hereto as Composite Exhibit "A." The documents include copies of the Note with any required indorsements, Recorded Mortgage, Assignment(s) of Mortgage, and any other applicable documentation supporting the right to seek a lift of the automatic stay and foreclose, if necessary.

5. The mortgage provides Secured Creditor a lien on the real property located at 12607 NW 7th Lane, Miami, Florida 33182, in Miami-Dade County, and legally described as:

LOT 1, IN BLOCK 10, OF LAKE POINTE, SECTION ONE, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 133, AT PAGE 19 OF THE PUBLIC RECORDS OF DADE COUNTY, FLORIDA.

6. The terms of the aforementioned Note and Mortgage have been in default, and remain in post-petition default, since October 18, 2017. The Note and Reverse Mortgage are in default due to a failure to maintain post-petition HOA dues in the amount of $150.00 and post-petition property insurance in the amount of $3,834.60. See Secured Creditor's statement in regard to indebtedness and default, attached hereto and incorporated herein as Exhibit "B."

7. As per the Indebtedness Worksheet attached hereto, Secured Creditor was due the pre-petition arrearage amount of $23,082.04 and the post-petition arrearage amount of $3,984.60. See Exhibit "C" attached hereto. The post-petition payment address is: 14405 Walters Road, Suite 200, Houston, TX 77014.

8. As of May 30, 2018, Secured Creditor is due the total loan balance of $286,055.00.

9. The appraised value of the property is $210,000.00. See Exhibit "D" which is attached hereto and permissible as a property valuation under Fed. R. Evid. 803(8).

10. Based upon the Debtor(s)' Confirmed 3rd Amended Chapter 13 Plan (Docket No.54), the pre-petition arrears are treated inside the plan. There are no post-petition regular monthly payments due on the reverse mortgage, however the Debtors are required to maintain HOA dues and property taxes and insurance.

11. Secured Creditor's security interest in the subject property is being significantly jeopardized by Debtor(s)' failure to comply with the terms of the subject loan documents while Secured Creditor is prohibited from pursuing lawful remedies to protect such interest.  Secured Creditor has no protection against the erosion of its collateral position and no other form of adequate protection is provided.

12. If Secured Creditor is not permitted to enforce its security interest in the collateral or be provided with adequate protection, it will suffer irreparable injury, loss, and damage.

13. Secured Creditor respectfully requests the Court grant it relief from the Automatic Stay in this cause pursuant to §362(d)(1) of the Bankruptcy Code, for cause, namely the lack of adequate protection to Secured Creditor for its interest in the above stated collateral.  The value of the collateral is insufficient in and of itself to provide adequate protection which the Bankruptcy Code requires to be provided to the Secured Creditor. Secured Creditor additionally seeks relief from the Automatic Stay pursuant to §362(d)(2) of the Bankruptcy Code, as the collateral is unnecessary to an effective reorganization of the Debtor's assets.

14. Once the stay is terminated, the Debtor will have minimal motivation to insure, preserve, or protect the collateral; therefore, Secured Creditor requests that the Court waive the 14-day stay period imposed by Fed.R.Bankr.P. 4001(a)(3).

15. Secured Creditor has incurred court costs and attorney's fees in this proceeding and will incur additional fees, costs and expenses in foreclosing the Mortgage and in preserving and protecting the property, all of which additional sums are secured by the lien of the mortgage. Secured Creditor seeks an award of its reasonable attorneys' fees and costs, or alternatively, leave to seek recovery of its reasonable attorneys' fees and costs in any pending or subsequent foreclosure proceeding.

16. A Proposed Order accompanies this Motion. See Exhibit "E" attached hereto.

**WHEREFORE**, Secured Creditor, prays this Honorable Court enter an order modifying the automatic stay under 11 U.S.C. § 362(d) to permit Secured Creditor to take any and all steps necessary to exercise any and all rights it may have in the collateral described herein, to gain possession of said collateral, to waive the 14-day stay imposed by Fed.R.Bankr.P. 4001(a)(3), to seek recovery of its reasonable attorneys' fees and costs incurred in this proceeding, and to any such further relief as this Honorable Court deems just and appropriate.

Date:

> ROBERTSON, ANSCHUTZ & SCHNEID, P.L.
> Authorized Agent for Secured Creditor
> 6409 Congress Ave., Suite 100
> Boca Raton, FL 33487
> Telephone: 561-241-6901
> Facsimile: 561-997-6909
>
> By:  _/s/ Shreena Augustin_____
> Shreena Augustin, Esquire
> Email: saugustin@rasflaw.com
> FL Bar Number: 0117598

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on June 14, 2018, I electronically filed the foregoing with

the Clerk of Court by using the CM/ECF system, and a true and correct copy has been served via

CM/ECF or United States Mail to the following parties:

ARACELY DIEGO
12607 NW 7 LANE
MIAMI, FL 33182

RICARDO CORONA, ESQ.
3899 NW 7 ST, SECOND FLOOR
MIAMI, FL 33126

NANCY K. NEIDICH
WWW.CH13MIAMI.COM
POB 279806
MIRAMAR, FL 33027

OFFICE OF THE US TRUSTEE
51 S.W. 1ST AVE.
SUITE 1204
MIAMI, FL 33130

ROBERTSON, ANSCHUTZ & SCHNEID, P.L.
Authorized Agent for Secured Creditor
6409 Congress Ave., Suite 100
Boca Raton, FL 33487
Telephone: 561-241-6901
Facsimile: 561-997-6909

By:  _/s/ Shreena Augustin_____
    Shreena Augustin, Esquire
    Email: saugustin@rasflaw.com
    FL Bar Number: 0117598

**Composite Exhibit "A"**

# ADJUSTABLE RATE NOTE
## (HOME EQUITY CONVERSION)

**STATE OF FL**

**July 28, 2008**

**PROPERTY ADDRESS**

12607 NW 7TH LANE
MIAMI, FL 33182

**FHA Case Number** ▮
**Loan Number:** ▮

## 1. DEFINITIONS

"Borrower" means each person signing at the end of this Note. "Lender" means **World Alliance Financial Corp.** and its successors and assigns. "Secretary" means the Secretary of Housing and Urban Development or his or her authorized representatives.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for amounts to be advanced by Lender up to a maximum principal amount of **Four Hundred Twenty-Seven Thousand Five Hundred and 00/100 Dollars ($427,500.00)**, to or for the benefit of Borrower under the terms of a Home Equity Conversion Loan Agreement dated **July 28, 2008** ("Loan Agreement"), Borrower promises to pay to the order of Lender a principal amount equal to the sum of all Loan Advances made under the Loan Agreement with interest. All amounts advanced by Lender, plus interest, if not paid earlier, are due and payable on **July 10, 2084**. Interest will be charged on unpaid principal at the rate of **Three and 709/1000** percent **(3.709%)** per year until the full amount of principal has been paid. The interest rate may change in accordance with Paragraph 5 of this Note. At the end of each month, accrued interest shall be added to and made part of the principal balance as a Loan Advance and shall likewise thereafter bear interest.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

### (A) Time

Borrower shall pay all outstanding principal and accrued interest to Lender upon receipt of a notice by Lender requiring immediate payment in full, as provided in Paragraph 7 of this Note.

### (B) Place

Payment shall be made at **3 Huntington Quadrangle 3rd Floor, Melville, NY 11747** or any such other place as Lender may designate in writing by notice to Borrower.

### (C) Limitation of Liability

Borrower shall have no personal liability for payment of the debt. Lender shall enforce the debt only through sale of the Property covered by the Security Instrument ("Property"). If this Note is assigned to the Secretary, the Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of assignment.

## 5. INTEREST RATE CHANGES

### (A) Change Date

The interest rate may change on the first day of **October 1, 2008** and on ___ that day of each succeeding year, or __X__ the first day of each succeeding month. Change Date means each date on which the interest rate could change.

### (B) The Index

Beginning with the first Change Date, the interest rate will be based on an Index. "Index" means the One-Month London Interbank Offered Rate ("LIBOR") as made available in the "Money Rates" section of the Wall Street Journal.. "Current Index" means the most recent Index figure available 30 days before the Change Date. If the Index (as defined above) is no longer available, Lender will use as a new Index any index prescribed by the Secretary. Lender will give Borrower notice of the new Index.

### (C) Calculation of Interest Rate Changes

Before each Change Date, Lender will calculate a new interest rate by adding a margin of **1.250** percentage points to the Current Index. Subject to the limits stated in Paragraph 5(D) of this Note, this amount will be the new interest rate until the next Change Date.

*First Note*

**(D) Limits on Interest Rate Changes**

___  **Annual**:  The interest rate will never increase or decrease by more than two percentage points (2.0%) on any single Change Date.  The interest rate will never be more than five percentage points (5.0%) higher or lower than the initial interest rate stated in Paragraph 2 of this Note.

_X_  **Monthly**: The interest rate will never increase above **13.709%**.

**(E) Notice of Changes**

Lender will give notice to Borrower of any change in the interest rate.  The notice must be given at least 25 days before the new interest rate takes effect, and must set forth (i) the date of the notice, (ii) the Change Date, (iii) the old interest rate, (iv) the new interest rate, (v) the Current Index and the date it was published, (vi) the method of calculating the adjusted interest rate, and (vii) any other information which may be required by law from time to time.

**(F) Effective Date of Changes**

A new interest rate calculated in accordance with Paragraphs 5(C) and 5(D) of this Note will become effective on the Change Date, unless the Change Date occurs less than 25 days after Lender has given the required notice.  If the interest rate calculated in accordance with Paragraphs 5(C) and 5(D) of this Note decreased, but Lender failed to give timely notice of the decrease and applied a higher rate than the rate which should have been stated in a timely notice, then Lender shall recalculate the principal balance owed under this Note so it does not reflect any excessive interest.

**6. BORROWER'S RIGHT TO PREPAY**

A Borrower receiving monthly payments under the Loan Agreement has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty.  Any amount of debt prepaid will first be applied to reduce the principal balance of the Second Note described in Paragraph 11 of this Note and then to reduce the principal balance of this Note.

All prepayments of the principal balance shall be applied by Lender as follows:

First, to that portion of the principal balance representing aggregate payments for mortgage insurance premiums;

Second, to that portion of the principal balance representing aggregate payments for servicing fees;

Third, to that portion of the principal balance representing accrued interest due under the Note; and

Fourth, to the remaining portion of the principal balance.  A Borrower may specify whether a prepayment is to be created to that portion of the principal balance representing monthly payments or the line of credit.  If Borrower does not designate which portion of the principal balance is to be prepaid, Lender shall apply any partial prepayments to an existing line of credit or create a new line of credit.

**7. IMMEDIATE PAYMENT IN FULL**

**(A) Death or Sale**

Lender may require immediate payment in full of all outstanding principal and accrued interest if:

(i)    A Borrower dies and the Property is not the principal residence of at least one surviving Borrower; or

(ii)    All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains (a) title to the Property in fee simple (b) a leasehold under a lease for less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower (or retaining a beneficial interest in a trust with such an interest in the Property), or (c) a life estate in the Property.

**(B) Other Grounds**

Lender may require immediate payment in full of all outstanding principal and accrued interest, upon approval by an authorized representative of the Secretary, if:

(i)    The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of a least one other Borrower;

(ii)    For a period of longer than twelve (12) consecutive months, a Borrower fails to physically occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

(iii)    An obligation of the Borrower under the Security Instrument is not performed.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, the debt enforced through sale of the Property may include costs and expenses, including reasonable and customary attorneys' fees, associated with enforcement of this Note to the extent not prohibited by applicable law.  Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

First Note

**(D) Trusts**

Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interest in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph.

## 8. WAIVERS

Borrower waives the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 9. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 10. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note only through sale of the Property.

## 11. RELATIONSHIP TO SECOND NOTE

**(A) Second Note**

Because Borrower will be required to repay amounts which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to grant a Second Note to the Secretary.

**(B) Relationship of Secretary Payments to this Note**

Payments made by the Secretary shall not be included in the debt due under this Note unless:

    (i)    This Note is assigned to the Secretary; or

    (ii)    The Secretary accepts reimbursements by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments made by the Secretary, including interest on the payments, shall be included in the debt.

**(C) Effect on Borrower**

Where there is no assignment or reimbursement as described in (B)(i) or (ii), and the Secretary makes payments to Borrower, then Borrower shall not:

    (i)    Be required to pay amounts owed under this Note until the Secretary has required payment in full of all outstanding principal and accrued interest under the Second Note held by the Secretary, notwithstanding anything to the contrary in Paragraph 7 of this Note; or

    (ii)    Be obligated to pay interest or shared appreciation under this Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance of this Note, notwithstanding anything to the contrary in Paragraphs 2 or 5 of this Note or any Allonge to this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

Dated: _____ 9-28-08 _____

_Aracely Diego_ _____
**ARACELY DIEGO**

_____    _____

First Note

# ALLONGE TO NOTE

**LOAN NUMBER:**

**FHA CASE NUMBER:**

**BORROWER(S):**      ARACELY DIEGO

**PROPERTY ADDRESS:**   12607 7TH LANE
                       MIAMI, FL 33182

**NOTE/LOAN AMOUNT**  $ 427,500.00

**NOTE/LOAN DATE:**     7/28/2008

Pay to the order of
without Recourse

World Alliance Financial Corp.

_____

By: David Peskin
Chief Executive Officer

```
CFN  2008R0832809
OR Bk 26606 Pss 3235 - 3245; (11pss)
RECORDED 10/10/2008 13:47:26
MTG DOC TAX 1,496.25
INTANG TAX 855.00
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA
```

Prepared by:
AdiraLedesma

**Requested by and returned to:**
World Alliance Financial Corp.
3 Huntington Quadrangle, 3rd Floor
Melville, NY 11747

**FHA Case Number** ▮▮▮▮▮▮

**State of Florida**

# ADJUSTABLE RATE
## HOME EQUITY CONVERSION MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on **July 28, 2008**. The mortgagor is **ARACELY DIEGO**, whose address is **12607 NW 7TH LANE, MIAMI, FL 33182** ("Borrower"). This Security Instrument is given to **World Alliance Financial Corp.**, which is organized and existing under the laws of the state of **New York**, and whose address is **3 Huntington Quadrangle 3rd Floor, Melville, NY 11747** ("Lender"). Borrower has agreed to repay to Lender amounts which Lender is obligated to advance, including future advances, under the terms of a Home Equity Conversion Loan Agreement dated the same date as this Security Instrument ("Loan Agreement"). The agreement to repay is evidenced by Borrower's Note dated the same date as this Security Instrument ("Note"). This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest at a rate subject to adjustment, and all renewals, extensions and modifications of the Note, up to a maximum principal amount **Four Hundred Twenty-Seven Thousand Five Hundred and 00/100 Dollars ($427,500.00)**; (b) the payment of all other sums, with interest, advanced under Paragraph 5 to protect the security of this Security Instrument or otherwise due under the terms of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. The full debt, including all amounts described in (a), (b), and (c) above, if not paid earlier, is due and payable on **July 10, 2084**. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, the following described property located in **Miami-Dade** County, Florida:

The real property located at the address **12607 NW 7TH LANE, MIAMI, FL 33182**, in the county of **Miami-Dade**, state of **FL**, described more fully on Exhibit A attached to this Mortgage.

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS.  Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest.**  Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note.

**2. Payment of Property Charges.**  Borrower shall pay all property charges consisting of taxes, ground rents, flood and hazard insurance premiums, and special assessments in a timely manner, and shall provide evidence of payment to Lender, unless Lender pays property charges by withholding funds from monthly payments due to the Borrower or by charging such payments to a line of credit as provided for in the Loan Agreement.

**3. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire.  This insurance shall be maintained in the amounts, to the extent and for the periods required by Lender or the Secretary of Housing and Urban Development ("Secretary").  Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary.  All insurance shall be carried with companies approved by Lender.  The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail.  Lender may make proof of loss if not made promptly by Borrower.  Each insurance company concerned is hereby authorized and directed to make payment for such loss to Lender, instead of to Borrower and Lender jointly.  Insurance proceeds shall be applied to restoration or repair of the damaged Property, if the restoration or repair is economically feasible and Lender's security is not lessened.  If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property and then to the reduction of the indebtedness under the Note and this Security Instrument.  Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**4. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence after the execution of this Security Instrument and Borrower (or at least one Borrower, if initially more than one person are Borrowers) and shall continue to occupy the Property as Borrower's principal residence for the term of the Security Instrument.  "Principal residence" shall have the same meaning as in the Loan Agreement.

Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted.  Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the Loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence.  If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease.  If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to merger in writing.

**5. Charges to Borrower and Protection of Lender's Rights in the Property.**  Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2.  Borrower shall pay these obligations on time directly to the entity which is owed the payment.  If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.  Borrower shall promptly discharge any lien which has priority over this Security Instrument in the manner provided in Paragraph 12(c).

covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

To protect Lender's security in the Property, Lender shall advance and charge to Borrower all amounts due to the Secretary for the Mortgage Insurance Premium ("MIP") as defined in the Loan Agreement as well as all sums due to the loan servicer for servicing activities ("Servicing Fee") as defined in the Loan Agreement. Any amounts disbursed by Lender under this Paragraph are obligatory and shall become an additional debt of Borrower as provided for in the Loan Agreement and shall be secured by this Security Instrument.

**6. Inspection.** Lender or its agent may enter on, inspect or make appraisals of the Property in a reasonable manner and at reasonable times provided that Lender shall give the Borrower notice prior to any inspection or appraisal specifying a purpose for the inspection or appraisal which must be related to Lender's interest in the Property. If the Property is vacant or abandoned or the loan is in default, Lender may take reasonable action to protect and preserve such vacant or abandoned Property without notice to the Borrower.

**7. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation, or other taking of any part of the Property, or for conveyance in place of condemnation shall be paid to Lender. The proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property, and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**
    **(a) Due and Payable.** Lender may require immediate payment in full of all sums secured by this Security Instrument if:
        (i)    A Borrower dies and the Property is not the principal residence of at least one surviving Borrower; or

        (ii)   All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred an no other Borrower retains (a) title to the Property in fee simple, (b) a leasehold under a lease for not less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower, or (c) a life estate in the Property (or a beneficial interest in a trust with such an interest in the Property).

    **(b) Due and Payable with Secretary Approval.** Lender may require immediate payment in full of all sums secured by this Security Instrument, upon approval by an authorized representative of the Secretary, if:
        (i)   The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower; or

        (ii)  For a period of longer than twelve (12) consecutive months, a Borrower fails to physically occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

        (iii) An obligation of the Borrower under this Security Instrument is not performed.

    **(c) Notice to Lender.** Borrower shall notify Lender whenever any of the events listed in subparagraphs (a) and (b) of this Paragraph 9(a)(ii) or (b) occur.

has had thirty (30) days after notice to either:

    (i)    Correct the matter which resulted in the Security Instrument coming due and payable; or

    (ii)   Pay the balance in full; or

    (iii)  Sell the Property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale toward the balance; or

    (iv)  Provide the Lender with a deed in lieu of foreclosure.

**(e) Trusts.** Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph 9.

**(f) Mortgage Not Insured.** Borrower agrees that should this Security Instrument and the Note not be eligible for insurance under the National Housing Act within eight (8) months from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to eight (8) months from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. No Deficiency Judgments.** Borrower shall have no personal liability for payment of the debt secured by this Security Instrument. Lender may enforce the debt only through sale of the Property. Lender shall not be permitted to obtain a deficiency judgment against Borrower if the Security Instrument is foreclosed. If this Security Instrument is assigned to the Secretary upon demand by the Secretary, Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of the assignment.

**11. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full. This right applies even after foreclosure proceedings are instituted. To reinstate this Security Instrument, Borrower shall correct the condition which resulted in the requirement for immediate payment in full. Foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with a foreclosure proceeding shall be added to the principal balance. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if:(i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two (2) years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the Security Instrument.

**12. First Lien Status**
**(a) Modification.** Borrower agrees to extend this Security Instrument in accordance with this Paragraph 12(a). If Lender determines that the original lien status of the Security Instrument is jeopardized under state law (including but not limited to situations where the amount secured by the Security Instrument equals or exceeds the maximum principal amount stated or the maximum period under which loan advances retain the same lien priority initially granted to loan advances has expired) and state law permits the original lien status to be maintained for future loan advances through the execution and recordation of one or more documents, then Lender shall obtain title evidence at Borrower's expense. If the title evidence indicates that the Property is not encumbered by any liens (except this Security Instrument, the Second Security Instrument described in Paragraph 13(a) and any subordinate liens that the Lender determines will also be subordinate to any future loan advances), Lender shall request the Borrower to execute such documents. If state law does not permit the original lien status to be extended to future loan advances, Borrower will be deemed to have failed to have performed an obligation under this Security Instrument.

deferral are not subordinate to this Security Instrument.

(c) **Prior Liens.** Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to all amounts secured by this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within ten (10) days of the giving of notice.

**13. Relationship to Second Security Instrument.**

(a) **Second Security Instrument.** In order to secure payments which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, unless otherwise provided by the Secretary, the Secretary has required Borrower to execute a Second Note and Second Security Instrument on the Property.

(b) **Relationship of First and Second Security Instruments.** Payments made by the Secretary shall not be included in the debt under the Note unless:

    (i)    This Security Instrument is assigned to the Secretary; or

    (ii)    The Secretary accepts reimbursement by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments but excluding late charges paid by the Secretary, shall be included in the debt under the Note.

(c) **Effect on Borrower.** Where there is no assignment or reimbursement as described in (b)(i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not:

    (i)    Be required to pay amounts owed under the Note, or pay any rents and revenues of the Property under Paragraph 19 to Lender or a receiver of the Property, until the Secretary has required payment in full of all outstanding principal and accrued interest under the Second Note; or

    (ii)    Be obligated to pay interest or shared appreciation under the Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance under the Note.

(d) **No Duty of the Secretary.** The Secretary has no duty to Lender to enforce covenants of the Second Security Instrument or to take actions to preserve the value of the Property, even though Lender may be unable to collect amounts owed under the Note because of restrictions in this Paragraph 13.

**14. Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**15. Successors and Assigns Bound; Joint and Several Liability.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender. Borrower may not assign any rights or obligations under this Security Instrument or under the Note, except to a trust that meets the requirements of the Secretary. Borrower's covenants and agreements shall be joint and several.

**16. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any

deemed to have been given to Borrower or Lender when given as provided in this Paragraph 16.

**17. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**18. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and this Security Instrument.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**19. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's Notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by this Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 19.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by this Security Instrument is paid in full.

**20. Foreclosure Procedure. If Lender requires immediate payment in full under Paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 20, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**21. Lien Priority.** The full amount secured by this Security Instrument shall have the same priority over any other liens on the Property as if the full amount had been disbursed on the date the initial disbursement was made, regardless of the actual date of any disbursement. The amount secured by this Security Instrument shall include all direct payments by Lender to Borrower and all other loan advances permitted by this Security Instrument for any purpose. This lien priority shall apply notwithstanding any State constitution, law or regulation, except that this lien priority shall not affect the priority of any liens for unpaid State or local governmental unit special assessments or taxes.

**22. Adjustable Rate Feature.** Under the Note, the initial stated interest rate of **Three and 709/1000** percent **(3.709%)** which accrues on the unpaid principal balance ("Initial Interest Rate") is subject to change, as described below. When the interest rate changes, the new adjusted interest rate will be applied to the total outstanding principal balance. Each adjustment to the interest rate will be based upon the One-Month London Interbank Offered Rate ("LIBOR") as made available in the "Money Rates" section of the Wall Street Journal ("Index") plus a margin.. If the Index is no longer available, Lender will be required to use any index prescribed by the Department of Housing and Urban Development. The new index will have a historical movement substantially similar to the original index, and the new index and margin will result in an annual percentage rate that is substantially similar to the rate in effect at the time the original index becomes unavailable.

succeeding month (Change Date) until the loan is repaid in full.

The value of the Index will be determined, using the most recent Index figure available thirty (30) days before the Change Date ("Current Index"). Before each Change Date, the new interest rate will be calculated by adding a margin to the Current Index. The sum of the margin plus the Current Index will be called the "Calculated Interest Rate" for each Change Date. The Calculated Interest Rate will be compared to the interest rate in effect immediately prior to the current Change Date (the "Existing Interest Rate).

   —    **Annually Adjusting Variable Rate Feature** - The interest rate will never increase or decrease by more than two percentage points (2.0%) on any single Change Date. The interest rate will never be more than five percentage points (5.0%) higher or lower than the initial interest rate stated in Paragraph 2 of this Note.

   X    **Monthly Adjusting Variable Rate Feature** - The Calculated Interest Rate will never increase above **13.709%**.

The Calculated Interest Rate will be adjusted if necessary to comply with the rate limitation(s) described above and will be in effect until the next Change Date. At any change date, if the Calculated Interest Rate equals the Existing Interest Rate, the interest rate will not change.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**24. Attorneys' Fees.** As used in this Security Instrument and the Note, "attorneys' fees" shall include any attorneys' fees awarded by an appellate court.

**25. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check all riders that are applicable].

| | Condominium Rider | X | PUD Rider |
|---|---|---|---|
| | Shared Appreciation Rider | | Other |

  BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses: _____

_____

Signature:

_Aracely Diego_

**ARACELY DIEGO**

**STATE OF FLORIDA**
**COUNTY OF** MIAMI DADE

The foregoing instrument was acknowledged before me this ___28___ day of

___July    2008___ , by ___ARACELY DIEGO___ , who is

personally known to me; who has produced ___DRIVER LICENSE___ as identification

and who did (did not) take an oath.

___Mary R. Sosa___
Notary Public

Name: ___MARY R. SOSA___

MARY R. SOSA
Commission #DD450913
My Commission Expires
July 14, 2009

## EXHIBIT A

Exhibit A to the Mortgage made on **July 28, 2008,** by **ARACELY DIEGO** ("Borrower") to **World Alliance Financial Corp.** ("Lender").  The Property is located in the county of **Miami-Dade**, state of **FL**, described as follows:

Description of Property

Legal Description attached hereto as Exhibit A and by this reference made a part hereof.

# UNITED GENERAL TITLE INSURANCE COMPANY

## EXHIBIT A

Commitment No █████████

**LOT 1, in Block 10, of LAKE POINTE, SECTION ONE, according to the plat thereof, as recorded in plat Book 133, at Page 19 of the Public Records of Dade County, Florida.**

**This property is the homestead of the borrower.**

OR BK 26606 PG 3245
LAST PAGE

### PLANNED UNIT DEVELOPMENT RIDER

FHA Case Number: ███████████████

THIS PLANNED UNIT DEVELOPMENT RIDER is made on July 28, 2008, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note to **World Alliance Financial Corp.,** ("Lender") of the same date and covering the Property described in the Security Instrument and located at:

12607 NW 7TH LANE, MIAMI, FL 33182

The Property is a part of a planned unit development (PUD) known as:
LAKE POINTE

**PUD COVENANTS. In addition to thee covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:**

A.   So long as the Owners' Association (or equivalent entity holding title to common areas and facilities, acting as trustee for the homeowners, maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the property located in the PUD, including all improvements now existing or hereafter erected on the mortgaged premises, and such policy is satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender and the Secretary require, including fire and other hazards included within the term "extended coverage," and loss by flood, to the extent required by the Secretary, then: (i) Lender waives the provision in Paragraph 2 of this Security Instrument for the payment of the premium for hazard insurance on the Property, and (ii) Borrower's obligation under Paragraph 3 of this Security Instrument to maintain hazard insurance on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners' Association policy. Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

B.   Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the PUD.

C.   If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_ARACELY DIEGO (Borrower)_

CFN: 20100584443 BOOK 27402 PAGE 3781
DATE:08/30/2010  09:01:30 AM
HARVEY RUVIN, CLERK OF COURT, MIA-DADE CTY ·

When Recorded Return To:
World Alliance Financial Corp.
C/O NTC 2100 Alt. 19 North
Palm Harbor, FL 34683

Loan #:
*Effective Date: 04/01/2010*

## ASSIGNMENT OF MORTGAGE

**FOR GOOD AND VALUABLE CONSIDERATION,** the sufficiency of which is hereby acknowledged, the undersigned, **World Alliance Financial Corp., WHOSE ADDRESS IS 3 HUNTINGTON QUADRANGLE, SUITE 201N, MELVILLE, NY, 11747, (ASSIGNOR),** by these presents does convey, grant, sell, assign, transfer and set over the described mortgage together with the certain note(s) described therein together with all interest secured thereby, all liens, and any rights due or to become due thereon to **REVERSE MORTGAGE SOLUTIONS, INC., WHOSE ADDRESS IS 2727 Spring Creek Drive, Spring, TX 77373, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE)**
Said Mortgage was made by **ARACELY DIEGO** and was recorded in Official Records of the Clerk of the Circuit Court of DADE County, Florida, in Book 26606, Page 3235 or Instr #

upon the property situated in said State and County as more fully described in said mortgage.

**Dated: 08/27/2010**
**World Alliance Financial Corp.**

*[signature]*
CRYSTAL MOORE   VICE PRESIDENT

Whose address is: 3 HUNTINGTON QUADRANGLE,  SUITE 201N MELVILLE, NY 11747

STATE OF FLORIDA
COUNTY OF PINELLAS

The foregoing instrument was acknowledged before me this 27th day of August in the year 2010 by CRYSTAL MOORE, personally known to me to be the VICE PRESIDENT of World Alliance Financial Corp., a corporation, on behalf of the corporation.

*[signature]*

Christopher Jones  Notary Public
Comm. Expires:  Aug 3, 2012

Christopher Jones
Notary Public, State of Florida
Commission # DD 811078
Expires August 03, 2012
Bonded Through National Notary Assn.

**Document Prepared By:**
Jessica Fretwell/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152
WAFM

**Exhibit "B"**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**IN RE:**                                                     **CASE NO.: 17-18430-AJC**
                                                                          **CHAPTER 13**

**ARACELY DIEGO,**

    **Debtor.**

_____/

**AFFIDAVIT OF INDEBTEDNESS IN SUPPORT OF**
**MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

    Affiant, Kimberly Ackerman _____, being first duly sworn according to the law, deposes and says the following:

1. I am employed as a Bankruptcy Representative of REVERSE MORTGAGE SOLUTIONS, INC., ("Secured Creditor") and am authorized to sign this affidavit on behalf of Secured Creditor. This affidavit if provided in support of the Motion for Relief from the Automatic Stay ("Motion") filed contemporaneously herewith.

2. I base this Affidavit on my personal knowledge, gained through review of Secured Creditor's business records regarding the Note, Mortgage, and other loan documents securing the real property located at 12607 NW 7th Lane, Miami, FL 33182. The Mortgage associated with this loan is a reverse mortgage.

3. Secured Creditor is responsible for the collection of this loan transaction.

4. In the regular performance of my job functions, I am familiar with business records maintained by Secured Creditor for the purpose of servicing mortgage loans. These records (which include data compilations, electronically imaged documents, and others) are made at or near the time of the occurrences or transactions recorded therein by a person with knowledge, or from information provided by a person with knowledge, and are kept in the course of business activity conducted regularly by Secured Creditor. It is the regular practice of Secured Creditor's mortgage-servicing business to make these records.

5. The Note was not in any particular amount, as the amounts advanced under the "reverse mortgage" loan depend upon the draws the borrower makes on the account. Repayment of the amounts lent under the terms of the Note was not to commence until the loan matured.

6. The loan balance continues to grow even if the Borrower halts taking cash advances. This is due to compounding interest and various fees and advances that are added to the loan balance each month. In a reverse mortgage, all advances are added to the loan balance, per the terms of the Note.

7. The terms and conditions of the Note and Reverse Mortgage are in default due to failure to perform an obligation under the Reverse Mortgage by failing to maintain HOA dues and post-petition property insurance in the amount of $3,984.60.

8. The default has not been cured. After a review of the records, Affiant states that the balance due on the Reverse Mortgage and Note is $286,055.00.

9. I have reviewed the documents attached as exhibits to the Motion and they are true and accurate copies of the original documents as imaged in our system and provided to our attorney.

10. This Affidavit is signed under penalty of perjury as being true and correct based on my personal knowledge of Secured Creditor's business records. I am over 18 years of age and am competent to testify about the facts contained herein.


**FURTHER AFFIANT SAYETH NAUGHT.**

Executed this 13 day of June 2018

Name: Kimberly Ackerman
Title: Bankruptcy Representative


STATE OF South Dakota
COUNTY OF Pennington

SUBSCRIBED and SWORN to before me on this 13th day of June, 20 18, by Kimberly Ackerman, ☒known to me (☐ or satisfactorily proven to me through production of _____ as identification) to be the person(s) who appeared before me.

(SEAL)



(Type or print name below signature) Brittany Droppers
Notary Public, State of South Dakota
Commission No.: _____
My Commission Expires: March 29, 2022

**My Commission Expires**
**March 29, 2022**

**Exhibit "C"**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

IN RE:                                                                                    CASE NO.: 17-18430-AJC
                                                                                                          CHAPTER 13

ARACELY DIEGO,

   **Debtor.**

_____/


### INDEBTEDNESS WORKSHEET

**Debt as of Petition Date**

   Total pre-petition indebtedness of debtor(s) to Movant **$275,899.77**

   **Amount of principal: $275,899.77**

   **Amount of interest: $0.00**

   **Amount of escrow (taxes and insurance): $0.00**

   **Amount of forced placed insurance expended by Movant: $0.00**

   **Amount of attorneys' fees and costs billed to debtor(s) pre-petition: $0.00**

   **Amount of pre-petition late fees, if any, billed to debtor(s): $0.00**

   **Any additional pre-petition fees, charges or amounts charged to debtor account and**
   **not listed above:**

   Contractual Interest Rate:  2.2950%

17-18430-AJC

**Amount of Alleged Post-Petition Default**
**(As of May 30, 2018)**

**Date last payment was received: N/A Reverse Mortgage**

**Alleged total number of payment due post-petition from filing of petition through due on 5/30/2018: N/A Reverse Mortgage**

**All post-petition payments alleged to be in default: N/A Reverse Mortgage**

| Alleged Amount Due Date | Alleged Amount Due | Amount Received | Amount Applied to Principal | Amount Applied to Interest | Amount Applied to Escrow | Late Fee Charged (if any) |
|---|---|---|---|---|---|---|
| | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Total: | $0.00 | $0.00 | $0 | $0 | $0.00 | $0.00 |

**Amount of movant's attorney's fees billed to debtor for the preparation and filing and prosecution of this motion**: $850.00

**Amount of movant's filing fee for this motion:** $181.00

**Other attorney's fees billed to debtor post-petition:** $0.00

**Amount of post-petition inspection fees:** $0.00

**Amount of movant's post-petition appraisal broker's price opinion:** $0.00

**Amount of forced place insurance or insurance provided by the movant post-petition:** $3,834.60

**Sum held in suspense by movant in connection with this contract, if applicable:** (-$0.00)

**Amount of other post-petition advances or charges, for example, taxes, insurance incurred by debtor, etc. (itemize each charge):** 10/18/2017 HOA Dues $150.00

**Total post-petition debt: $5,015.60**

**Exhibit "D"**



# OFFICE OF THE PROPERTY APPRAISER

## Detailed Report

Generated On : 6/4/2018

| Property Information | |
|---|---|
| Folio: | ███████████ |
| Property Address: | 12607 NW 7 LN<br>Miami, FL 33182-2092 |
| Owner | ARACELY DIEGO |
| Mailing Address | 12607 NW 7 LN<br>MIAMI, FL 33182 |
| PA Primary Zone | 9400 PLANNED AREA DEVELOPMENT |
| Primary Land Use | 0410 RESIDENTIAL - TOTAL VALUE :<br>TOWNHOUSE |
| Beds / Baths / Half | 3 / 2 / 0 |
| Floors | 2 |
| Living Units | 1 |
| Actual Area | 1,729 Sq.Ft |
| Living Area | 1,626 Sq.Ft |
| Adjusted Area | 1,626 Sq.Ft |
| Lot Size | 1,920 Sq.Ft |
| Year Built | 1993 |



| Assessment Information | | | |
|---|---|---|---|
| Year | 2018 | 2017 | 2016 |
| Land Value | $0 | $0 | $0 |
| Building Value | $0 | $0 | $0 |
| XF Value | $0 | $0 | $0 |
| Market Value | $210,000 | $223,468 | $206,158 |
| Assessed Value | $118,814 | $116,371 | $113,978 |

| Benefits Information | | | | |
|---|---|---|---|---|
| Benefit | Type | 2018 | 2017 | 2016 |
| Save Our Homes Cap | Assessment Reduction | $91,186 | $107,097 | $92,180 |
| Homestead | Exemption | $25,000 | $25,000 | $25,000 |
| Second Homestead | Exemption | $25,000 | $25,000 | $25,000 |
| Senior Homestead | Exemption | $50,000 | $50,000 | $50,000 |
| Widow | Exemption | $500 | $500 | $500 |
| Note: Not all benefits are applicable to all Taxable Values (i.e. County, School Board, City, Regional). | | | | |

| Taxable Value Information | | | |
|---|---|---|---|
| | 2018 | 2017 | 2016 |
| **County** | | | |
| Exemption Value | $100,500 | $100,500 | $100,500 |
| Taxable Value | $18,314 | $15,871 | $13,478 |
| **School Board** | | | |
| Exemption Value | $25,500 | $25,500 | $25,500 |
| Taxable Value | $93,314 | $90,871 | $88,478 |
| **City** | | | |
| Exemption Value | $0 | $0 | $0 |
| Taxable Value | $0 | $0 | $0 |
| **Regional** | | | |
| Exemption Value | $50,500 | $50,500 | $50,500 |
| Taxable Value | $68,314 | $65,871 | $63,478 |

The Office of the Property Appraiser is continually editing and updating the tax roll. This website may not reflect the most current information on record. The Property Appraiser and Miami-Dade County assumes no liability, see full disclaimer and User Agreement at http://www.miamidade.gov/info/disclaimer.asp

Version:



# OFFICE OF THE PROPERTY APPRAISER

Generated On : 6/4/2018

**Property Information**

**Folio:** ▉▉▉▉▉▉▉▉▉

**Property Address:** 12607 NW 7 LN

# Roll Year **2018** Land, Building and Extra-Feature Details

| Land Information | | | | | |
|---|---|---|---|---|---|
| Land Use | Muni Zone | PA Zone | Unit Type | Units | Calc Value |

| Building Information | | | | | | |
|---|---|---|---|---|---|---|
| Building Number | Sub Area | Year Built | Actual Sq.Ft. | Living Sq.Ft. | Adj Sq.Ft. | Calc Value |

| Extra Features | | | |
|---|---|---|---|
| Description | Year Built | Units | Calc Value |

The Office of the Property Appraiser is continually editing and updating the tax roll. This website may not reflect the most current information on record. The Property Appraiser and Miami-Dade County assumes no liability, see full disclaimer and User Agreement at http://www.miamidade.gov/info/disclaimer.asp

Version:

 **OFFICE OF THE PROPERTY APPRAISER**

Generated On : 6/4/2018

**Property Information**

**Folio** ▆▆▆▆▆▆▆▆

**Property Address:** 12607 NW 7 LN

# Roll Year **2017** Land, Building and Extra-Feature Details

| Land Information | | | | | |
|---|---|---|---|---|---|
| Land Use | Muni Zone | PA Zone | Unit Type | Units | Calc Value |

| Building Information | | | | | | |
|---|---|---|---|---|---|---|
| Building Number | Sub Area | Year Built | Actual Sq.Ft. | Living Sq.Ft. | Adj Sq.Ft. | Calc Value |

| Extra Features | | | |
|---|---|---|---|
| Description | Year Built | Units | Calc Value |

The Office of the Property Appraiser is continually editing and updating the tax roll. This website may not reflect the most current information on record. The Property Appraiser and Miami-Dade County assumes no liability, see full disclaimer and User Agreement at http://www.miamidade.gov/info/disclaimer.asp

Version:

Case 17-18430-AJC Doc 72 Filed 06/14/18 Page 33 of 38



# OFFICE OF THE PROPERTY APPRAISER

Generated On : 6/4/2018

**Property Information**

**Folio** ▮▮▮▮▮▮▮▮▮▮

**Property Address:** 12607 NW 7 LN Miami, FL 33182-2092

# Roll Year **2016** Land, Building and Extra-Feature Details

| Land Information | | | | | |
|---|---|---|---|---|---|
| Land Use | Muni Zone | PA Zone | Unit Type | Units | Calc Value |

| Building Information | | | | | | |
|---|---|---|---|---|---|---|
| Building Number | Sub Area | Year Built | Actual Sq.Ft. | Living Sq.Ft. | Adj Sq.Ft. | Calc Value |

| Extra Features | | | |
|---|---|---|---|
| Description | Year Built | Units | Calc Value |

The Office of the Property Appraiser is continually editing and updating the tax roll. This website may not reflect the most current information on record. The Property Appraiser and Miami-Dade County assumes no liability, see full disclaimer and User Agreement at http://www.miamidade.gov/info/disclaimer.asp

Version:



# OFFICE OF THE PROPERTY APPRAISER

Generated On : 6/4/2018

**Property Information**

**Folio:** ████████

**Property Address:** 12607 NW 7 LN

| Full Legal Description |
| --- |
| LAKE POINTE SEC 1 |
| PB 133-19 |
| LOT 1 BLK 10 |
| LOT SIZE 1920 SQ FT |
| & INT IN COMMON AREAS |
| ████████████ |

| Sales Information | | | |
| --- | --- | --- | --- |
| Previous Sale | Price | OR Book-Page | Qualification Description |
| 07/25/2008 | $10 | 26606-3234 | Sales which are disqualified as a result of examination of the deed |
| 04/01/2007 | $0 | 25553-3293 | Sales which are disqualified as a result of examination of the deed |
| 08/01/1999 | $0 | 18760-1571 | Sales which are disqualified as a result of examination of the deed |
| 04/01/1999 | $112,900 | 18612-4398 | Sales which are qualified |
| 08/01/1993 | $99,900 | 16024-2669 | Sales which are qualified |
| 11/01/1992 | $360,000 | 15744-3518 | Deeds that include more than one parcel |
| 12/01/1991 | $0 | 15329-6642 | Sales which are disqualified as a result of examination of the deed |

The Office of the Property Appraiser is continually editing and updating the tax roll. This website may not reflect the most current information on record. The Property Appraiser and Miami-Dade County assumes no liability, see full disclaimer and User Agreement at http://www.miamidade.gov/info/disclaimer.asp

Version:

**Exhibit "G"**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

IN RE:                                                                    CASE NO.: 17-18430-AJC
                                                                                        CHAPTER 13

Aracely Diego,

    Debtor.

_____/

**ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY**

    THIS CASE came on for hearing on                                        , on        REVERSE
MORTGAGE SOLUTIONS, INC.'s ("Secured Creditor") Motion for Relief from the Automatic
Stay (Docket No.    ). The Court heard argument of the Parties and has based its decision on the
record.  Accordingly, it is:

    **ORDERED**:

1. Secured Creditor's Motion for Relief from Automatic Stay is GRANTED.

2. The automatic stay imposed by 11 U.S.C. § 362 is terminated as to the Secured
   Creditor's interest in the following property located at 12607 NW 7th Lane, Miami FL
   33182 in Miami-Dade County, Florida, and legally described as:

LOT 1, IN BLOCK 10, OF LAKE POINT, SECTION ONE, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 133, AT PAGE 19 OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA.

3. The Order Granting Relief from Stay is entered for the sole purpose of allowing Secured Creditor to exercise any and all *in rem* remedies against the property described above. Secured Creditor shall not seek an *in personam* judgment against Debtors.

4. Secured Creditor is further granted relief in order to contact the Debtors by telephone or written correspondence in order to discuss the possibility of a forbearance agreement, loan modification, refinance agreement or loan workout/loss mitigation agreement.

5. The Secured Creditor's request to waive the 14-day stay period pursuant to Bankruptcy Rule 4001(a)(3) is granted.

6. Attorneys' fees in the amount of $850.00 and costs in the amount of $181.00 are awarded for the prosecution of this Motion for Relief from Stay, but are not recoverable from the Debtor(s) or the Debtor(s)' Bankruptcy estate.

###

Submitted by:
Shreena Augustin
Robertson, Anschutz & Schneid, PL
*Attorney for Creditor*
6409 Congress Ave., Suite 100
Boca Raton, FL 33487


Shreena Augustin, Esq., is directed to serve copies of this order on the parties listed and file a certificate of service.

ARACELY DIEGO
12607 NW 7 LANE
MIAMI, FL 33182

RICARDO CORONA, ESQ.
3899 NW 7 ST, SECOND FLOOR
MIAMI, FL 33126

NANCY K. NEIDICH
WWW.CH13MIAMI.COM
POB 279806
MIRAMAR, FL 33027

OFFICE OF THE US TRUSTEE
51 S.W. 1ST AVE.
SUITE 1204
MIAMI, FL 33130